1   HENRY WEISSMANN (State Bar No. 132418)
    *Henry.Weissmann@mto.com*
2   RICHARD ST. JOHN (State Bar No. 202560)
    *Richard.Stjohn@mto.com*
3   PETER RENN (State Bar No. 247633)
    *Peter.Renn@mto.com*
4   MUNGER, TOLLES & OLSON LLP
    355 South Grand Avenue, Thirty-Fifth Floor
5   Los Angeles, CA  90071-1560
    Telephone:   (213) 683-9100
6   Facsimile:    (213) 687-3702

7

8   Attorneys for Defendants,
    VERIZON INTERNET SERVICES INC.,
9   GTE.NET LLC D/B/A VERIZON INTERNET
    SOLUTIONS

10              UNITED STATES DISTRICT COURT

11             CENTRAL DISTRICT OF CALIFORNIA

12                    EASTERN DIVISION

13

14

| | |
|---|---|
| CHARLOTTE MALONEY, on behalf of herself and all persons similarly situated, | CASE NO. ED CV 08-01885 SGL (AGRx) |
| Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** |
| vs. | |
| VERIZON INTERNET SERVICES INC., GTE.NET LLC D/B/A VERIZON INTERNET SOLUTIONS, and Does 1 through 100, inclusive, | Date:         March 16, 2009 Time:         10:00 a.m. Judge:        Hon. Stephen G. Larson Courtroom:   1 |
| Defendants. | |

# TABLE OF CONTENTS

I.    OVERVIEW ........................................................................................... 1

II.   PLAINTIFF'S ALLEGATIONS ............................................................ 2

III.  ARGUMENT .......................................................................................... 5

    A.   None Of Plaintiff's Claims For Relief Is Valid .............................. 5

        1.   Breach Of Contract (Including The Implied Covenant Of Good Faith) ......................................................................... 5

            a.   The Breach Of Contract Claim Must Be Dismissed Because Verizon Only Allegedly Promised "Up To 3 Mbps" – Not "3 Mbps" – And Plaintiff's Speed Fell Within Those Parameters ........................................... 5

            b.   The Implied Covenant Of Good Faith and Fair Dealing Does Not Permit Plaintiff To Evade The Express Terms Of The Contract .................................... 7

            c.   Plaintiff Cannot Allege That Verizon's Conduct Caused Her Purported Damages ...................................... 8

            d.   Plaintiff Cannot Allege Facts to Support Breach Or A Reasonable Basis For The Calculation of Damages ..................................................................... 10

        2.   Unfair Competition Law .................................................. 11

            a.   Verizon's Business Practice Is Not "Fraudulent" Or "Misleading." ..................................................... 11

                (1)   Plaintiff's Interpretation Of "Up To 3 Mbps" Is Unreasonable As A Matter Of Law .............. 11

                (2)   "Up To 3 Mbps" Must Be Read In The Context Of The Terms of Service ...................... 14

                (3)   Plaintiff Has Failed To Allege Actual Reliance or Materiality ....................................... 15

                (4)   Plaintiff Has Failed to Allege Her Claims Sounding In Fraud With Particularity ................. 17

            b.   Verizon's Business Practice Is Not "Unfair." ............... 18

         3.   Consumers Legal Remedies Act (CLRA) ............................... 21

            a.   Plaintiff's CLRA Claim Reprises the UCL Claim, And Fails For the Same Reasons. .................................. 21

            b.   Plaintiff Has Not Met Her Pleading Burden With Respect To Her Passing Allegation of Unconscionability ............................................................. 23

    B.   Any Claim Brought On Behalf Of Putative Non-California Class Members Must Be Dismissed .................................................... 23

IV.   CONCLUSION ..................................................................................... 24

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Argueta v. Banco Mexicano, S.A.*,
   87 F.3d 320 (9th Cir. 1996) ................................................................. 23

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544, 127 S. Ct. 1955 (2007) ..................................................... 5

*Beydoun v. Clark Constr. Int'l, LLC*,
   72 Fed. Appx. 907 (4th Cir. 2003) ........................................................ 11

*Fraker v. KFC Corp.*,
   No. 06-CV-1284-JM, 2007 WL 1296571 (S.D. Cal. Apr. 30, 2007) ............... 12

*Freeman v. Time, Inc.*,
   68 F.3d 285 (9th Cir. 1995) ........................................................... 15, 22

*Glen Holly Entm't, Inc. v. Tektronix, Inc.*,
   352 F.3d 367 (9th Cir. 2003) ............................................................... 10

*Johnson v. Mitsubishi Digital Elecs. Am., Inc.*,
   578 F. Supp. 2d 1229 (C.D. Cal. 2008) .................................................. 13

*Johnson v. Riverside Healthcare Sys., LP*,
   534 F.3d 1116 (9th Cir. 2008) ............................................................... 5

*Labrador v. Seattle Mortgage Co.*,
   No. 08-2270 SC, 2008 WL 4775239 (N.D. Cal. Oct. 29, 2008) .................... 23

*Laster v. T-Mobile USA, Inc.*,
   407 F. Supp. 2d 1181 (S.D. Cal. 2005) ............................................. 16, 22

*Lee v. City of Los Angeles*,
   250 F.3d 668 (9th Cir. 2001) ................................................................. 2

*Lozano v. AT&T*,
   504 F.3d 718 (9th Cir. 2007) ............................................................... 18

*McKinnis v. Kellogg USA*,
   No. CV-07-2611 ABC, 2007 WL 4766060 (C.D. Cal. Sep. 19, 2007) ....... 12, 22

*Meinhold v. Spring Spectrum, L.P.*,
   No. S-07-00456 FCD, 2007 WL 1456141 (E.D. Cal. May 16, 2007) .............. 17

*Morris v. BMW of N. Am., LLC*,
   No. C-07-02827 WHA, 2007 WL 3342612 (N.D. Cal. Nov. 7, 2007) ............. 18

*Pfizer, Inc. v. Miles, Inc.*,
   868 F. Supp. 437 (D. Conn. 1994) .................................................. 13, 14

*Rielly v. D.R. Horton, Inc.*,
   No. SACV-06-867 AG, 2008 WL 4330299 (C.D. Cal. Sep. 17, 2008) ....... 10, 11

*Rose v. Wells Fargo & Co.*,
   902 F.2d 1417 (9th Cir. 1990) ............................................................... 7

*Spiegler v. Home Depot U.S.A., Inc.*,
   552 F. Supp. 2d 1036 (C.D. Cal. 2008) ......................................... 19, 20, 22

DEFS.' MEM. OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS

# TABLE OF AUTHORITIES
## (continued)

*Sprewell v. Golden State Warriors,*
  266 F.3d 979 (9th Cir. 2001) ................................................................. 5

*Summit Tech., Inc. v. High-Line Med. Instruments, Co.,*
  933 F. Supp. 918 (C.D. Cal. 1996) ...................................................... 13

*Vess v. Ciba-Geigy Corp.,*
  317 F.3d 1097 (9th Cir. 2003) ............................................................ 17

*Whitaker v. Tandy Corp.,*
  No. C-97-00803 VRW, 1997 WL 703766 (N.D. Cal. Oct. 31, 1997) ... 13, 14, 22

### STATE CASES

*Akkerman v. Mecta Corp., Inc.,*
  152 Cal. App. 4th 1094, 62 Cal. Rptr. 3d 39 (2007) ........................... 16

*Am. Online v. Superior Court,*
  90 Cal. App. 4th 1, 108 Cal. Rptr. 2d 699 (2001) .............................. 24

*Carma Developers, Inc. v. Marathon Dev. Cal., Inc.,*
  2 Cal. 4th 342, 6 Cal. Rptr. 467 (1992) ............................................... 8

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,*
  20 Cal. 4th 163, 83 Cal. Rptr. 2d 548 (1999) .................................... 18

*F&H Constr.v. ITT Hartford Ins. Co. of the Midwest,*
  118 Cal. App. 4th 364, 12 Cal. Rptr. 896 (2004) ................................. 6

*Gerlund v. Elec. Dispensers Int'l,*
  190 Cal. App. 3d 263, 235 Cal. Rptr. 279 (1987) ............................... 8

*Gregory v. Albertson's Inc.,*
  104 Cal. App. 4th 845, 128 Cal. Rptr. 2d 389 (2002) ....................... 18

*Hall v. Time, Inc.,*
  158 Cal. App. 4th 847, 70 Cal. Rptr. 3d 466 (2008) ......................... 16

*Lavie v. Procter & Gamble Co.,*
  105 Cal. App. 4th 496, 129 Cal. Rptr. 2d 486 (2003) ....................... 12

*Plotkin v. Sajahtera, Inc.,*
  106 Cal. App. 4th 953, 131 Cal. Rptr. 2d 303 (2003) ....................... 21

*Racine & Laramie, Ltd. v. Dep't of Parks & Recreation,*
  11 Cal. App. 4th 1026, 14 Cal. Rptr. 2d 335 (1992) ........................... 8

*St. Paul Fire and Marine Ins. Co. v. Am. Dynasty Surplus Lines Ins. Co.,*
  101 Cal. App. 4th 1038, 124 Cal. Rptr. 2d 818 (2002) ....................... 8

# TABLE OF AUTHORITIES
## (continued)

### STATUTES AND RULES

Cal. Bus. & Prof. Code § 17200 ........................................................................ 12

Cal. Bus. & Prof. Code § 17204 ........................................................................ 16

Cal. Bus. & Prof. Code § 17500 ........................................................................ 12

Cal. Bus. & Prof. Code § 17535 ........................................................................ 16

Cal. Civ. Code § 1770 .............................................................................. 21, 22

Cent. Dist. Local Rule 7-3 .............................................................................. 24

Fed. R. Civ. P. 9(b) .......................................................................................... 17

Fed. R. Civ. P. 12(b)(6) .................................................................................... 5

### OTHER AUTHORITIES

*In re D.L. Blair Corp.*, 82 F.T.C. 234 (1973) ................................................... 13

DEFS.' MEM. OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS

1  I.  **OVERVIEW**

2      At the heart of plaintiff's First Amended Complaint lies a logical fallacy:

3  Namely that by signing up for internet service described as "*up to*" 3 Mbps by

4  defendants, she was in fact entitled to receive internet service *at* 3 Mbps.  But

5  plainly a service to be provided "up to" a given speed is not thereby guaranteed to

6  be delivered exactly "at" that speed.

7      Moreover, the contractual Terms of Service make emphatically clear that

8  defendants (collectively, "Verizon") never promised that their internet service

9  would be free from speed limitations.  Indeed, the opposite is true: the Terms of

10  Service, which plaintiff concedes she read and relied upon, specifically state that

11  the customer *will* encounter such speed limitations.  *See, e.g.*, First Amended

12  Compl. ("FAC") ¶ 21 ("The speed of the Service *will vary* based on network or

13  Internet congestion, your computer configuration, the condition of your telephone

14  line and the wiring inside your location, *among other factors*.") (quoting Terms of

15  Service ¶ 6.1; emphasis added).

16      For each of these and other reasons explored in more detail below, plaintiff

17  has failed to state a claim upon which relief can be granted.

18      And even aside from her inability to state a claim on her own behalf, plaintiff

19  overreaches by attempting to bring this action on behalf of a class consisting of

20  residents of some 13 states.  At least the non-California residents in the proposed

21  class are subject to a mandatory forum selection clause specifying a Virginia venue.

22  Accordingly, if the Court were to allow any of plaintiff's claims to stand, it should

23  at a minimum dismiss all claims plaintiff seeks to assert on behalf of non-California

24  residents.

25

26

27

28

## II.    **PLAINTIFF'S ALLEGATIONS**[1]

Plaintiff receives Digital Subscriber Line ("DSL") internet service through Verizon.  First Amended Compl. ("FAC") ¶ 6.  She alleges that she signed up for that service on or about August 13, 2008, and on that date entered into a contract with Verizon composed of the Terms of Service and a "pricing plan."  Although she does not otherwise elaborate on the content of the "pricing plan," she alleges that it offered her service at a rate of speed described as "up to 3 Mbps."  *Id.* ¶ 24.[2]  Plaintiff's complaint depends on the proposition that the aforementioned description should be read as a promise to provide her and other purported class members with DSL service *at* a 3 Mbps rate of speed.

Yet plaintiff affirmatively alleges that she reviewed the Terms of Service, which contain numerous disclaimers and admonitions relating to the speed at which customers can expect to receive service.[3]  "Plaintiffs [*sic*] read the pricing plan and the Terms of Service before clicking 'agree.'"  FAC ¶ 25.  Plaintiff's complaint even quotes the disclaimer contained in Paragraph 6.1 of the Terms of Service, which expressly notes that internet speed *will vary* based on multiple non-exclusive factors:

> The speed of the Service *will vary* based on network or Internet congestion, your computer configuration, the condition of your telephone line and the wiring inside your location, among other factors.

---

[1] Verizon takes plaintiff's factual allegations as true only for purposes of this motion to dismiss but in no way concedes or waives the right to contest the veracity of such allegations.

[2] Data speed is measured in bits per second (or "bps"); thus, a kilobit (or "Kbps") is 1,000 bits per second, and a megabit (or "Mbps") is 1,000,000 bits per second.  *Id.* ¶ 15.

[3] A complete copy of the Terms of Service is attached as Exhibit A to the accompanying declaration of Donald Boose.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (noting that courts may consider documents not physically attached to complaint on a motion to dismiss where the complaint necessarily relies on them and their authenticity is not in question).  Citations herein to the "Terms of Service" refer to that exhibit.

DEFS.' MEM. OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS

FAC ¶ 21 (quoting Terms of Service ¶ 6.1) (emphasis added).  And that disclaimer is reinforced by still other language in the Terms of Service emphasizing that no particular speed is guaranteed:

- "Verizon *does not warrant* that the service or equipment provided by Verizon will perform at a *particular speed*, bandwidth or data throughput rate . . . *or the like*."  Terms of Service ¶ 12.3 (emphasis added).

- "The provisioning of service is subject to network availability, circuit availability, loop length, the condition of your telephone line and wiring inside your location, and your computer/device configuration and capabilities, among other factors." *Id.* ¶ 12.2

- "You also may not exceed the bandwidth usage limitations that Verizon may establish from time to time for the Service. . ." *Id.* ¶ 4.3.

- "The service supplied hereunder is provided on an 'as is' or 'as available' basis, with all faults." *Id.* ¶ 12.1

Despite these disclaimers – which, again, plaintiff concedes she read before entering into a contract with Verizon – plaintiff contends that she "believed that her DSL service would have a maximum download speed of 3 Mbps."  FAC ¶ 25.  In the same paragraph, however, she admits that she "understood that she might not always be able to achieve that speed."  *Id.*

Plaintiff alleges that at some unspecified point, she discovered that she would never be able to achieve a download rate in excess of 1.792 Mbps. *Id.* ¶ 27.  She alleges that this resulted from Verizon configuring her line so as to "cap" it at this rate.  *Id.*  Rather than ascribing to Verizon some nefarious motivation, plaintiff alleges that her speed was "capped" due to the technical limitations of the sort disclosed in the Terms of Service.  Specifically, she alleges that when she or any other customer signed up for DSL service, Verizon made a "technical

determination" of the "actual maximum reliable speed the consumer's phone lines could handle," *id.* ¶ 18, and provisioned the customer's line to block his or her modem from attempting to transmit or receive data at a speed above this maximum reliable speed, *id.* ¶ 19.  This determination of a customer's maximum reliable speed was allegedly influenced by a variety of factors, most notably the distance between the customer and the internet provider's central office (also known as line or loop length). *Id.* ¶¶ 13, 18.

Plaintiff admits that her service is billed on a month-to-month basis (with no obligation to continue service for any length of time). *Id.* ¶ 24.  Tellingly, plaintiff does not allege that she elected to terminate her service once she learned that she lived too far away from Verizon's central office to receive data at 3 Mbps. *Id.* ¶ 27. (Though not addressed in her First Amended Complaint, she has continued to receive service from Verizon well after retaining counsel and filing this action.) Nor does plaintiff describe any steps she took to seek a refund under the money back guarantee procedure referenced in the Terms of Service.[4]  (Again, though not addressed in her First Amended Complaint, the evidence will show that plaintiff was expressly advised before she filed her First Amended Complaint that a money back guarantee was available with respect to her service.)  Instead, plaintiff retained counsel and filed this action on behalf of herself and a proposed class spanning California, Texas, Florida, Washington, Oregon, Idaho, Illinois, Wisconsin, Michigan, Ohio, Indiana, North Carolina, and South Carolina.[5]  FAC ¶ 6.

---

[4] *See* Terms of Service ¶ 8.3 ("If we provide a money back guarantee ('MBG') for your Service . . . you may cancel your Service and receive a full refund of all monthly, one-time and equipment charges paid to Verizon."); *see also* Verizon High Speed Internet, http://www22.verizon.com/residential/highspeedinternet/features/features.htm (last visited December 26, 2008) (offering 30-day money back guarantee); Frequently Asked Questions, http://www22.verizon.com/residential/highspeedinternet/faq/faq.html (last visited December 26, 2008) (stating, under "Billing and Account Info," that a 30-day money back guarantee is offered "if, for any reason, you are not completely satisfied").

[5] Plaintiff seeks to represent a multi-state class of consumers for purposes of the breach of contract and breach of implied covenant of good faith and fair dealing claims. *See* FAC at 3, 8 (headings to First and Second Causes of Action).  With respect to the Unfair Competition Law and Consumers Legal Remedies Act claims, she only seeks to represent

DEFS.' MEM. OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS

### III.   ARGUMENT

A complaint must be dismissed under Rule 12(b)(6) where plaintiff has failed to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007); *accord Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1122 (9th Cir. 2008).  Dismissal may be based on either "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Johnson*, 524 F.3d at 1121.  While the factual allegations in the complaint must be accepted as true, "[t]he court need not [] accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  A plaintiff's obligation to state the grounds for his or her entitlement to relief therefore demands "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S. Ct. at 1964-65.

### A.   None Of Plaintiff's Claims For Relief Is Valid.

#### 1.   Breach Of Contract (Including The Implied Covenant Of Good Faith)

##### a.   The Breach Of Contract Claim Must Be Dismissed Because Verizon Only Allegedly Promised "Up To 3 Mbps" – Not "3 Mbps" – And Plaintiff's Speed Fell Within Those Parameters.

Plaintiff's entire theory of her case hinges upon the Court's willingness to entertain the impossible: that a promise to provide speed "up to" 3 Mbps is *the same as* a promise to provide speed "at" 3 Mbps.  Plaintiff's breach of contract claim thus asks the Court to rewrite the parties' contract by striking through the first two words in the alleged "up to 3 Mbps" promise.  Indeed, had the parties intended for the contract to guarantee 3 Mbps internet service, they might have started with

a class of California consumers. *See id.* at 9, 11 (headings to Third and Fourth Causes of Action).

precisely such a deletion.  Converting the contract alleged here to a contract for guaranteed 3 Mbps internet service would have also required gutting the Terms of Service of its numerous disclaimers pertaining to speed:

- "The speed of the Service *will vary* based on network or Internet congestion, your computer configuration, the condition of your telephone line and the wiring inside your location, *among other factors*."  Terms of Service ¶ 6.1 (emphasis added).

- "Verizon *does not warrant* that the service or equipment provided by Verizon will perform at a *particular speed*, bandwidth or data throughput rate . . . *or the like*."  *Id.* ¶ 12.3 (emphasis added).

- "The provisioning of service is subject to network availability, circuit availability, loop length, the condition of your telephone line and wiring inside your location, and your computer/device configuration and capabilities, *among other factors*."  *Id.* ¶ 12.2.

The Court need look no further than the plain terms of the alleged "up to 3 Mbps" promise to dismiss the breach of contract claim.  But basic principles of contract interpretation further support such a conclusion.  To read the "up to 3 Mbps" phrase as plaintiff urges would violate the basic rule of contract interpretation that every word must be given meaning where possible.  *See, e.g.*, *F&H Constr.v. ITT Hartford Ins. Co. of the Midwest*, 118 Cal. App. 4th 364, 371, 12 Cal. Rptr. 896 (2004).  Furthermore, where the parties desired to fix a term at a precise value, such as the cost of monthly service, they expressed such an intention in clear and unequivocal terms, rather than prefacing the term with other conditions.  *Cf.* FAC ¶ 24 (alleging a "pricing plan of $37.99 per month," not a "pricing plan of *up to* $37.99 per month").   The Court should decline plaintiff's invitation to construct out of whole cloth a contract to which neither party agreed.

Plaintiff admits that such an imaginary contract would have also been

DEFS.' MEM. OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS

1   technically unfeasible.  She recognizes that the "maximum reliable speed [her]

2   phone lines could handle" was less than 3 Mbps.  *Id.* ¶¶ 18, 27.  Plaintiff likewise

3   admits that the speed to which she was allegedly set – 1.792 Mbps – far surpassed

4   the maximum speed she would have received had she purchased the next cheaper

5   purported plan of "up to 768 Kbps."  *Id.* ¶ 16.  Under these circumstances, where

6   plaintiff concedes that she received speed within the specified parameters, it was

7   impossible for Verizon to breach the alleged "up to 3 Mbps" term.  (As further

8   explained *infra*, pp. 13-14, courts have routinely rejected challenges to promises

9   that simply highlight a maximum or minimum value within a range.)  Indeed,

10  because plaintiff "believed that her DSL service would have a *maximum* download

11  speed of 3 Mbps," *id.* ¶ 25 (emphasis added), which she construed as a "speed

12  limit," *id.* ¶ 24, Verizon could only technically breach a contract for "up to 3 Mbps"

13  speed if plaintiff's internet speed was *too fast*.  *Id.* ¶ 25 (emphasis added).

14              b.    **The Implied Covenant Of Good Faith and Fair**
15                    **Dealing Does Not Permit Plaintiff To Evade The**
16                    **Express Terms Of The Contract.**

17       Plaintiff gains nothing by including a cause of action that tacks the words

18  "good faith" onto her breach of contract claim.  She cannot indirectly achieve

19  through a claim for "good faith" that which she could not directly achieve through

20  the breach of contract claim.  The reason is simple: the implied covenant of good

21  faith and fair dealing may only be used to supply a requirement "when the contract

22  between the parties is silent or ambiguous on [a] subject."  *Rose v. Wells Fargo &*

23  *Co.*, 902 F.2d 1417, 1426 (9th Cir. 1990).  Because the contract alleged here

24  expressly disclaims that any particular speed will be delivered, plaintiff cannot

25  simply demand an implied term barring speed limitations and thereby supersede the

26  parties' original agreement.

27       It is well-settled that an implied covenant cannot prohibit that which the

28

DEFS.' MEM. OF POINTS AND AUTHORITIES
                                                     IN SUPPORT OF MOTION TO DISMISS

1    contract expressly allows – which is precisely what plaintiff hopes to accomplish
2    here.  *See Carma Developers, Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 374,
3    6 Cal. Rptr. 467 (1992) (finding "no reported case in which a court has held the
4    covenant of good faith may be read to prohibit a party from doing that which is
5    expressly permitted by an agreement."); *id.* at 373 ("It is universally recognized the
6    scope of conduct prohibited by the covenant of good faith is circumscribed by the
7    purposes and express terms of the contract."); *Gerlund v. Elec. Dispensers Int'l*,
8    190 Cal. App. 3d 263, 277, 235 Cal. Rptr. 279 (1987) ("There cannot be a valid
9    express contract and an implied contract, each embracing the same subject, but
10   requiring different results.") (internal quotation marks omitted); *Racine & Laramie,*
11   *Ltd. v. Dep't of Parks & Recreation*, 11 Cal. App. 4th 1026, 1032, 14 Cal. Rptr. 2d
12   335 (1992) ("the implied covenant is limited to assuring compliance with the
13   express terms of the contract, and cannot be extended to create obligations not
14   contemplated by the contract.").

15   Here, the alleged contract obligates Verizon to provide internet service, but it
16   affords Verizon the latitude to do so at speeds "up to" 3 Mbps.  In addition to
17   granting Verizon explicit flexibility with respect to speed, the contract expressly
18   advises customers that the speed they experience "will vary" and is not guaranteed.
19   *See* Terms of Service ¶ 6.1 ("The bandwidth available to each device connected to
20   the network *will vary* . . .  The speed of the Service *will vary* . . .") (emphasis
21   added); *id.* ¶ 12.3 ("Verizon *does not warrant* that the service … will perform at a
22   *particular speed*….").  No covenant implied by law can supersede this express facet
23   of the parties' agreement.

24           c.       **Plaintiff Cannot Allege That Verizon's Conduct**
25                    **Caused Her Purported Damages.**

26   Even if plaintiff could convince the Court to ignore the plain meaning of the
27   "up to 3 Mbps" promise and the multiple disclaimers pertaining to speed, her claim
28   would still fail for lack of causation.  *See St. Paul Fire and Marine Ins. Co. v. Am.*

DEFS.' MEM. OF POINTS AND AUTHORITIES
                    IN SUPPORT OF MOTION TO DISMISS

1  *Dynasty Surplus Lines Ins. Co.*, 101 Cal. App. 4th 1038, 1060, 124 Cal. Rptr. 2d

2  818 (2002) ("An essential element of a claim for breach of contract are damages

3  *resulting from the breach*. . . . Causation of damages in contract cases requires that

4  the damages be proximately caused by the defendant's breach.") (emphasis in

5  original).  Plaintiff concedes that the reason she could not achieve "up to 3 Mbps"

6  speed is because of factors such as the distance between her residence and the

7  central office.  FAC ¶¶ 13, 18.  The only wrong that Verizon is charged with

8  committing is providing her with the "maximum reliable speed [her] phone lines

9  could handle" based on the practical constraints inherent to her situation.  *Id.* ¶ 18.

10  Even Verizon's alleged configuration of its equipment was an admittedly "technical

11  determination," *id.* ¶ 18, made pursuant to the physical constraints noted above.  It

12  is no surprise, then, that plaintiff realized from the outset that "defendants cannot

13  guarant[ee] a particular speed will always be enjoyed."  *Id.* ¶ 37; *accord id.* ¶ 25.

14  In other words, even if Verizon had not configured customers' lines as

15  alleged in the complaint, plaintiff does not allege that she would have been

16  *physically* able to receive service at the rate of 3 Mbps.  Indeed, because she

17  recognizes that Verizon's alleged conduct in "capping" her rate of speed was

18  intended to ensure that she connected at the "maximum reliable speed," *id.* ¶ 18,

19  she implicitly concedes that that she could *not* have reliably connected to the

20  internet at a 3 Mbps rate of speed.  Because her theory of recovery for *all* the claims

21  in this action depends on her contention that she was entitled to receive 3 Mbps

22  some if not all of the time, plaintiff cannot sufficiently allege that Verizon's

23  conduct caused the alleged injury or damage.

24  Moreover, if plaintiff was dissatisfied with her service, she could have

25  terminated her servicee and availed herself of the money back guarantee that she

26  first encountered when reading the Terms of Service, and that was advised of again

27  before filing her First Amended Complaint.  Terms of Service ¶ 8.3.  Yet she does

28  not allege that she *either* terminated her service or attempted to avail herself of – or

DEFS.' MEM. OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS

1    even inquire about – the money back guarantee.  She cannot fairly contend that

2    Verizon's conduct caused her damages, when she voluntarily chose to sustain the

3    damages about which she complains here.

4              d.      **Plaintiff Cannot Allege Facts to Support Breach Or A**

5                      **Reasonable Basis For The Calculation of Damages.**

6          Plaintiff's theory of recovery is also deficient because she has not and cannot

7    allege "a rational basis for the assessment of damages," which she is obligated to

8    do.  *Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 352 F.3d 367, 381 (9th Cir. 2003)

9    (internal quotation marks omitted).  Plaintiff alleges that there were two speed tiers

10   available to her, each at a different price point: "up to 768 Kbps" for $19.99 per

11   month or "up to 3 Mbps" for $ 37.99 per month.  FAC ¶ 24.  Since by her own

12   admission, she received service in the "up to 3 Mbps" range – and even above the

13   top of the next cheaper "up to 768 Kbps" range – plaintiff all but concedes that she

14   received exactly what she was owed under the contract.

15         Plaintiff's sole theory of injury consists of her alleged inability to receive

16   service at a 3 Mbps rate of speed at least occasionally.  FAC ¶¶ 25, 37.  Still, she

17   concedes that she understood all along that she would "not always be able to

18   achieve that speed."  *Id.* ¶ 25.  She apparently came to this understanding based on

19   her review of the Terms of Service, which as previously noted repeatedly disclaim

20   any guaranteed speed, and disclose the reality that the customer's internet speed

21   will vary.  *See* Terms of Service ¶¶ 6.1, 12.2, & 12.3.

22         Since even by plaintiff's own theory, she was not entitled to receive a 3

23   Mbps download speed all the time – or any particular fraction of the time – she has

24   failed to set forth a "a rational basis for the assessment of damages."  *Glen Holly*,

25   352 F.3d at 381.  Plaintiff's claim for damages is similar to the one rejected in

26   *Rielly v. D.R. Horton, Inc.*, No. SACV-06-867 AG, 2008 WL 4330299, at *4-5

27   (C.D. Cal. Sep. 17, 2008).  There, an employee alleged that he was entitled to a

28

bonus of "at least $75,000."  In short, he "assert[ed] a right to a bonus, but offer[ed] no method of calculation for that bonus."  *Id.* at *4.  This saddled the Court with an impossible task: "how is the Court to calculate a bonus 'of at least $75,000?'  Should the number be $85,000?  $100,000?"  *Id.*

Plaintiff has left this Court in the same predicament as *Rielly*, where the facts alleged simply do not lend themselves to a reasonable basis for calculating damages.  How much, for example, would a defendant owe to a plaintiff for promising to pay "up to $100" but paying only $50?  Damages in the amount of $50 would obviously subvert the parties' original intent that some amount short of $100 would be permissible.  *See also Beydoun v. Clark Constr. Int'l, LLC*, 72 Fed. Appx. 907, 912-13 (4th Cir. 2003) (finding that an agreement to pay a minimum of $5 million and a maximum of $20 million provided no method to calculate the particular amount to be paid for breach).  The promise that plaintiff claims to glean from the alleged contract is one that inherently defies any attempt at monetary quantification.[6]

## 2.   Unfair Competition Law

### a.   Verizon's Business Practice Is Not "Fraudulent" Or "Misleading."

#### (1)   Plaintiff's Interpretation Of "Up To 3 Mbps" Is Unreasonable As A Matter Of Law.

The unreasonableness of plaintiff's interpretation of "up to 3 Mbps" permeates all her causes of action and is equally fatal to each claim.

---

[6] Although plaintiff has arbitrarily selected two numbers that she feels would encompass the scope of damages (i.e., between $5 to $15 per month), she does not and cannot allege how these figures are derived in any way from the terms of the contract.  Any attempt to assign a dollar value to Mbps (e.g., $10 per 1 Mbps) would squarely contradict what plaintiff has already disclaimed in the complaint – that she had any reasonable expectation that she would be able to achieve the 3 Mbps with any given frequency.  FAC ¶ 25 ("she understood she might not always be able to achieve [3 Mbps]").  Stated differently, plaintiff is not entitled to obtain the damages that would flow from a contract where 3 Mbps was in fact guaranteed.

1    California's Unfair Competition Law ("UCL") prohibits any "unlawful,

2  unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.

3  The False Advertising Law (FAL) similarly prohibits any "untrue or misleading"

4  advertising.  Cal. Bus. & Prof. Code § 17500.  Under either of these statutes,

5  conduct may be fraudulent or misleading if it is likely to deceive a reasonable

6  consumer within the target population – here, a reasonable consumer of high speed

7  internet DSL service.[7]  *See Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496,

8  508-9, 129 Cal. Rptr. 2d 486 (2003); *id.* at 506 (noting that advertising aimed at a

9  particularly susceptible audience such as preschool children is measured by the

10  audience to which it is addressed).  Whether read in isolation or in the context of

11  the Terms of Service, the alleged "up to 3 Mbps" statement would not deceive a

12  *reasonable* consumer into believing that she would in fact be guaranteed 3 Mbps

13  speed free from speed limitations.

14    A misunderstood statement is not the same as a misleading statement.  While

15  certain consumers may project their own individualized meanings onto a statement,

16  their fundamental assumptions about a product or service are oftentimes simply

17  unreasonable.  In such instances, courts have not hesitated to dismiss the claims that

18  depend on these unreasonable interpretations on a 12(b)(6) motion.  *See Fraker v.*

19  *KFC Corp.*, No. 06-CV-1284-JM, 2007 WL 1296571, at *3 (S.D. Cal. Apr. 30,

20  2007) (holding that "[n]o reasonable consumer would rely upon [] statements" such

21  as "The good news is all foods can fit into a balanced eating plan.  That includes

22  tacos, pizza, chicken, seafood and burgers." and "You can enjoy 'fast food' as part

23  of a sensible balanced diet." for "specific representations as to health, quality, or

24  safety."); *McKinnis v. Kellogg USA*, No. CV-07-2611 ABC, 2007 WL 4766060, at

25  *4 (C.D. Cal. Sep. 19, 2007) (holding that "[n]o reasonable consumer would view

26  the trademark 'FROOT LOOPS' name as describing the ingredients of the cereal").

27  [7] Furthermore, as explained in greater detail below, plaintiff must also allege that she
28  *actually relied* upon the challenged "up to 3 Mbps" statement.

DEFS.' MEM. OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS

1   The Court should follow a similar path here.

2          The "up to 3 Mbps" statement at issue in this case is no different than the

3   "Save up to 50%" department store sign that most every consumer has encountered

4   – but which no reasonable consumer takes to mean that all items in the store are

5   50% off.  Otherwise, there would be no need for the words "up to."  Applying this

6   common sense rationale, several courts have held that a statement focusing on the

7   minimum or maximum figures from a range of possibilities is not misleading as a

8   matter of law.  In *Whitaker*, for example, Judge Walker held that "no reasonable

9   consumer could have been misled by the alleged misrepresentation" that satellite

10  programming could be received for "as little as $1 a day" – even though the actual

11  cost of service for a given user could obviously exceed that amount.  *Whitaker v.*

12  *Tandy Corp.*, No. C-97-00803 VRW, 1997 WL 703766, at *3 (N.D. Cal. Oct. 31,

13  1997).  Similarly, the statement "Save up to $192 a year" was found to be not

14  misleading, because it "use[d] language which suggests the savings represent the

15  outer limits."  *Pfizer, Inc. v. Miles, Inc.*, 868 F. Supp. 437, 446 (D. Conn. 1994).

16  *Cf. Summit Tech., Inc. v. High-Line Med. Instruments, Co.*, 933 F. Supp. 918, 931

17  (C.D. Cal. 1996) (statement that lasers were "perfectly reliable" was found to be

18  non-actionable – in spite of the fact that such a statement suggests the products are

19  "100% reliable," which they were not).  Even the Federal Trade Commission,

20  which polices deceptive advertising, found that an advertisement emphasizing the

21  maximum number of prizes available (15,610) was not misleading, even though a

22  much smaller number (227) was actually given, as not all winners claimed their

23  prizes.  *See In re D.L. Blair Corp.*, 82 F.T.C. 234 (1973).  Notably, the statements

24  at issue in that case did not even contain prefatory "up to" language.  *See also*

25  *Johnson v. Mitsubishi Digital Elecs. Am., Inc.*, 578 F. Supp. 2d 1229, 1232, 1241

26  (C.D. Cal. 2008) (advertisements for high-definition television marketed as

27  "1080p" could not reasonably be understood as promising that all input ports could

28  accept 1080p signals from devices such as Blu-ray disc players or that broadcast

- 13 -

1  outlets would use 1080p signals).

2  In short, plaintiff's story of purported deception has been told before – and it

3  has been rejected.  As *Whitaker* and *Pfizer* explain, a reasonable consumer knows

4  that not everyone is entitled to the lowest cost or the maximum savings; that is the

5  import of the "as little as" and "up to" language.  Certainly no less care and

6  judgment should be expected from a sophisticated consumer of high speed DSL

7  internet service than from the consumer who properly reads the "Save up to 50%"

8  sign at a department store.  The practices of which plaintiff complains are a

9  common facet of everyday life, and Verizon should not bear liability for her

10  inability to discern between a speed ceiling and speed floor.

11
12  (2)  **"Up To 3 Mbps" Must Be Read In The Context Of The Terms of Service.**

13  If there was any lingering doubt in a reasonable consumer's mind as to the

14  import of the phrase "up to," it would have been dispelled by the three separate

15  disclaimers that plaintiff concedes she read in the Terms of Service.  These

16  disclaimers explained that internet speed would be affected by multiple non-

17  exclusive factors and that no particular speed would be guaranteed.  Terms of

18  Service ¶¶ 6.1, 12.2, & 12.3.  The key language bears repeating:

19  ▪  "The speed of the Service *will vary* . . ."  *Id.* ¶ 6.1 (emphasis
20     added).

21  ▪  "Verizon *does not warrant* that the service . . . will perform at a
22     *particular speed . . . or the like*."  *Id.* ¶ 12.3 (emphasis added).

23  ▪  "The provisioning of service is subject to network availability,
24     circuit availability, loop length, . . . and your computer/device
25     configuration and capabilities, . . . *among other factors*."  *Id.* ¶ 12.2
26     (emphasis added).

27  It is difficult to conceive of how Verizon could have been any clearer or broader in

28

DEFS.' MEM. OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS

1   disclaiming the absence of speed limitations.

2        Indeed, the disclaimers here are even more substantial that the one at issue in

3   *Freeman v. Time, Inc.*, 68 F.3d 285 (9th Cir. 1995).  There, the Ninth Circuit

4   affirmed dismissal of plaintiff's UCL and Consumers Legal Remedies Act

5   ("CLRA") claims brought in response to a mailer stating, "If you return the grand

6   price winner number, we'll officially announce that MICHAEL FREEMAN HAS

7   WON $1,666,675."  *Id.* at 287.  The mailer also included a disclaimer in small print

8   that the chances of winning were dependent upon the number of entries received,

9   and that 900 million copies of the mailer had been distributed.  Based on the

10  disclaimer, the court found that it would be unreasonable for a reader to believe that

11  he or she had already won.  *Id.* at 290 ("Such an inference is unreasonable in the

12  context of the entire document.").

13       Here as well, in the context of the entire alleged contract, it was unreasonable

14  for plaintiff to believe that 3 Mbps would be guaranteed.  Furthermore, although the

15  level of prominence and conspicuousness of the disclaimers in the Terms of Service

16  is irrelevant in light of plaintiff's concession that she read the entire document

17  before clicking to signify her acceptance of its terms, FAC ¶ 25, the disclaimers

18  were in fact thrice repeated, expressed in no uncertain terms, and displayed in

19  normal size font.  Terms of Service ¶¶ 6.1, 12.2, & 12.3.  Under these

20  circumstances, plaintiff's interpretation of "up to 3 Mbps" defies reason.

21                 (3)    **Plaintiff Has Failed To Allege Actual Reliance**

22                       **or Materiality.**

23       If receiving service *at* 3 Mbps was in fact important to plaintiff, there are

24  several factual allegations curiously absent from the complaint.  For instance,

25  plaintiff never alleges asking the customer service representative at the time of her

26  initial order to confirm that she would receive a speed *at* 3 Mbps.  Similarly,

27  plaintiff never alleges directing such an inquiry to Verizon after reading the Terms

28  of Service, which disclaimed a guarantee of any particular speed "or the like."

1   Terms of Service ¶ 12.3.  Likewise, plaintiff never alleges terminating her service

2   after apparently discovering that her residence was located too far away from

3   Verizon's central office to receive a speed *at* 3 Mbps.

4          Of course, plaintiff can make none of these allegations because none of them

5   is true.  This is a fatal deficiency.  After the passage of Proposition 64 in November

6   2004, which limited standing to any person who has suffered injury in fact and has

7   lost money or property "as a result of" a violation of the UCL or FAL, Cal. Bus. &

8   Prof. Code §§ 17204, 17535, a plaintiff must plead and prove actual reliance on the

9   allegedly fraudulent or misleading statement.  *See Laster v. T-Mobile USA, Inc.*,

10  407 F. Supp. 2d 1181, 1193-94 (S.D. Cal. 2005) (requiring causation); *Hall v. Time,*

11  *Inc.*, 158 Cal. App. 4th 847, 855-59, 70 Cal. Rptr. 3d 466 (2008) (requiring

12  causation and reliance); *Akkerman v. Mecta Corp., Inc.*, 152 Cal. App. 4th 1094,

13  1103, 62 Cal. Rptr. 3d 39 (2007) (same).  No longer may a plaintiff simply allege a

14  probability of confusion and call it a day.

15         Here, plaintiff never alleges that she saw any of the Verizon advertisements

16  referenced in the complaint prior to her purchasing decision.  FAC ¶ 16.  She also

17  never alleges that the "up to 3 Mbps" statement was material to her purchasing

18  decision, i.e., that without the statement, she would not have acted as she did.  *See*

19  *Hall*, 158 Cal. App. 4th at 857.  While plaintiff alleges that she read the "pricing

20  plan" during the activation process, she fails to allege the contents of that plan (e.g.,

21  whether it explicitly referenced an "up to 3 Mbps" statement).  *See* FAC ¶¶ 20, 25.

22  More importantly, she never alleges that had the "pricing plan" been absent from

23  the activation process, she would have abandoned her plan to subscribe to

24  Verizon's service.  In sum, plaintiff has failed to allege that she was exposed to the

25  alleged "up to 3 Mbps" statement prior to her purchasing decision or that such a

26  statement was material to her purchasing decision.

27

28

1
2
         (4)     **Plaintiff Has Failed to Allege Her Claims Sounding In Fraud With Particularity.**

3       Plaintiff's deficiencies with respect to pleading actual reliance and

4 materiality are emblematic of deeper problems with her UCL and CLRA claims.

5 For all allegations of fraud, plaintiff must plead with particularity, which means that

6 "the who, what, when, where, and how" of the purported misconduct must be

7 alleged. *See Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1106 (9th Cir. 2003)

8 (internal quotation marks omitted); Fed. R. Civ. P. 9(b) ("a party must state with

9 particularity the circumstances constituting fraud"). Even where fraud is not an

10 essential element of a claim, any allegation that "sounds in fraud" must satisfy the

11 particularity requirement. *Vess*, 317 F.3d at 1103-4 ("Fraud allegations may

12 damage a defendant's reputation regardless of the cause of action in which they

13 appear, and they are therefore properly subject to Rule 9(b) in every case.");

14 *Meinhold v. Spring Spectrum, L.P.*, No. S-07-00456 FCD, 2007 WL 1456141, at

15 *5-6 (E.D. Cal. May 16, 2007) (dismissing UCL claim where allegations sounding

16 in fraud were not pled with particularity).

17      Here, as well, plaintiff's claims sound in fraud, as they allege "a 'fraudulent'

18 business act" that was "likely to [] deceive[]." FAC ¶ 41; *accord id.* ¶ 52(a)

19 (alleging that Verizon represented that its service had characteristics which it did

20 not have). However, plaintiff has only made a terse allegation that defendants

21 advertised in "newspaper and magazine, television and Internet advertising." *Id.*

22 ¶ 16. This falls far short of the requisite particularity. As in *Meinhold*, plaintiff

23 "does not identify what advertisements she is referring to, when she saw them,

24 where she saw them, or how the statements made in those specific advertisements

25 were untrue or misleading" 2007 WL 1456141, at *6. Similarly, although she

26 alludes to a "pricing plan" presented during the activation process, FAC ¶ 25, she

27 never alleges the contents of that pricing plan. Accordingly, even if the Court

28 declines to dismiss the claim for all the reasons identified above, plaintiff should be

DEFS.' MEM. OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS

1   required to replead with particularity.

2           b.      **Verizon's Business Practice Is Not "Unfair."**

3           Plaintiff's attempt at stating a claim under the "unfairness" prong of the UCL

4   is as deficient as her attempt under the "fraudulent" prong.  Courts have applied two

5   different "unfairness" tests.  Conduct may be unfair if (1) it is tethered to a

6   legislatively declared policy under the so-called "tethering" test and/or (2) the

7   utility of the challenged practice is outweighed by consumer harm under a

8   balancing test.  *See Lozano v. AT&T*, 504 F.3d 718, 735 (9th Cir. 2007).  While the

9   there is reason to think the "tethering" test is the more appropriate of the two to

10  apply, plaintiff has failed to state a claim for "unfair" conduct under either test.

11          **Tethering Test.**  The Court should require that the alleged unfairness be

12  tethered to a legislatively declared policy.  The California Supreme Court has

13  cautioned that courts adjudicating UCL cases "may not apply purely subjective

14  notions of fairness," and at least in the context of suits between competitors "any

15  finding of unfairness … must be tethered to some legislatively declared policy."

16  *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 184,

17  186, 83 Cal. Rptr. 2d 548 (1999).  Several courts have recognized that even outside

18  the context of suits between competitors, "the rationale of *Cel-Tech* [] compels the

19  conclusion that the unfairness prong must be tethered to some legislative policy[;]

20  otherwise the courts will roam across the landscape of consumer transactions

21  picking and choosing which they like and which they dislike."  *Morris v. BMW of

22  N. Am., LLC*, No. C-07-02827 WHA, 2007 WL 3342612, at *8 (N.D. Cal. Nov. 7,

23  2007); *accord Gregory v. Albertson's Inc.*, 104 Cal. App. 4th 845, 854, 128 Cal.

24  Rptr. 2d 389 (2002).  This interpretation has significant logical appeal, since it

25  would make little sense interpret the same word in a statute (i.e., "unfair") to

26  possess two different meanings, depending upon whether a suit is between

27  competitors or brought by a consumer.

28          Plaintiff does not and cannot allege that the conduct at issue here was unfair

DEFS.' MEM. OF POINTS AND AUTHORITIES
                                         IN SUPPORT OF MOTION TO DISMISS

by the yardstick of some legislatively declared policy.  Rather, she asserts that Verizon's conduct is unfair under the less rigorous balancing test, *see* FAC ¶ 42, a test the California Supreme Court has criticized as "too amorphous" and "provid[ing] too little guidance to courts and businesses."  *Cel-Tech,* 20 Cal. 4th at 185.  In such circumstances, application of *Cel-Tech* and its progeny compels dismissal of plaintiff's claim.  In any event, as shown below, plaintiff's claim would not pass muster under even the less rigorous balancing test she prefers.

**Balancing Test.**  In asserting liability under the dubious "balancing" test, plaintiff attacks Verizon's charging the same monthly price to the group of persons who had signed up for "up to 3 Mbps," when some of them could achieve 3 Mpbs and others allegedly could not.  FAC ¶ 42.  Plaintiff's contention that she should have been charged a lower price (apparently because there were other customers receiving internet at a faster speed and yet paying the same price) is similar to the claim rejected in *Spiegler v. Home Depot U.S.A., Inc.*, 552 F. Supp. 2d 1036 (C.D. Cal. 2008).  There, defendants sold cabinet facing to plaintiffs at agreed-upon contractual prices based on an initial calculation made by a sales representative.  *Id.* at 1040.  When plaintiffs learned that the sales representative made commissions based on a subsequent and allegedly more accurate calculation made by a "Measurement Technician," they claimed they had been overcharged and were entitled to the lower price based on the second calculation.  *Id.*  "In essence, plaintiffs[] claim[ed] that the UCL requires defendants to charge them in accordance with the allegedly more accurate measurements."  *Id.* at 1046.  The court, however, saw through this as nothing more than a backdoor attempt at rewriting the contract, which never stated that the agreed-upon price would be modified for re-measurement.  *Id.*  Accordingly, it granted defendant's motion to dismiss, because "the UCL cannot be used to rewrite [plaintiffs'] contracts or to

1   determine whether their terms of the contracts are fair."[8]  *Id.*

2       Here, as well, plaintiff alleges that she was entitled to some sort of price

3   discount once Verizon allegedly made more accurate measurements of internet

4   speed.  At the threshold, this argument makes little sense on its own terms, since

5   plaintiff concedes that the speed to which she was allegedly set (1.792 Mbps) after

6   that measurement would not have qualified for the next cheaper pricing plan

7   available to her (which was for speeds "up to 768 Kbps").  *See* FAC ¶¶ 16-18, 24,

8   27.  Moreover, just as a retailer is entitled to charge the same price for a shirt

9   regardless of whether it comes in small, medium, or large, so too is Verizon entitled

10   to charge a group of customers the same price for "up to 3 Mbps" service.  As

11   discussed above, plaintiff recognized that internet speeds would vary – both

12   between consumers and during her own course of internet usage – and that the price

13   she paid for internet service assumed this variation.  Indeed, taken to its logical

14   extreme, plaintiff's theory would also entitle her to a price discount whenever she

15   used her internet service to watch a video, rather than to read an email, because the

16   former activity is more data intensive and subject to performance variation.  FAC ¶

17   21 (noting that bandwidth may fluctuate "depending upon . . . the type of use (e.g.,

18   streaming media) among other factors.") (quoting Terms of Service ¶ 6.1).

19   Assuming that it would be even technologically (not to mention commercially)

20   feasible for any internet provider to vary their prices continuously based on ever-

21   changing data speeds for each customer, this is simply not the contract to which

22   plaintiff agreed – just as the plaintiffs in *Spiegler* never agreed to purchase cabinet

23   facing based upon some future re-measurement.

---

24   [8] In addition, the court in that case dismissed the plaintiffs' UCL claim based on allegedly

25   "fraudulent" conduct, the CLRA claim, the breach of contract claim, and the breach of implied covenant of good faith and fair dealing claim.  *Spiegler*, 552 F. Supp. 2d at 1047-

26   55.  The court held that "[t]o the extent that plaintiffs allege that they believed the contract price would be modified as a result of measurements taken by the Measurement

27   Technician, plaintiffs' beliefs were unreasonable."  *Id.* at 1054.  Likewise, plaintiff Maloney's belief that she should have only paid a prorated price for her precise level of

28   internet speed was unreasonable.

DEFS.' MEM. OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS

To the extent plaintiff's unfairness claim is based not upon the service's pricing but upon the theory that Verizon failed to disclose speed limitations, such a theory is untenable in light of the other factual allegations in the complaint. As noted previously, the presence of the words "up to" before "3 Mbps" would alert any reasonable consumer to limitations in internet speed, and there were three separate disclaimers to confirm this fact. Terms of Service ¶¶ 6.1, 12.2, & 12.3. That a more individualized disclaimer could have theoretically been tailored for each customer does not defeat the sufficiency of the disclaimers that were in place. *See Plotkin v. Sajahtera, Inc.*, 106 Cal. App. 4th 953, 966, 131 Cal. Rptr. 2d 303 (2003) ("there is no requirement that reasonable notice has to be the best possible notice."). Verizon's disclosure was complete and it was accurate. The UCL demands no more.

### 3. Consumers Legal Remedies Act (CLRA)

#### a. Plaintiff's CLRA Claim Reprises the UCL Claim, And Fails For the Same Reasons.

The Consumers Legal Remedies Act makes certain enumerated methods of competition and unfair or deceptive acts unlawful. Cal. Civ. Code § 1770. Plaintiff seizes upon four of these specified acts: (1) representing that a service has characteristics which it does not have, Cal. Civ. Code § 1770(a)(5), (2) representing that a service is of a particular standard or quality if it is of another, Cal. Civ. Code § 1770(a)(7), (3) representing that a transaction confers rights or obligations which it does not have, Cal. Civ. Code § 1770(a)(14), and (4) inserting an unconscionable provision in the contract, Cal. Civ. Code § 1770(a)(19). Despite plaintiff's scattershot approach, none of these provisions fit the facts alleged here.

The conduct alleged in support of plaintiff's CLRA claim is virtually identical to that alleged in her closely related claim of "fraudulent" conduct under the UCL. Accordingly, plaintiff's CLRA claim should be dismissed for all the same reasons as her UCL claim. First, no reasonable consumer would read "up to 3

Mbps" as indicating that 3 Mbps could be achieved all or even some of the time, because this is only the *maximum* attainable speed within a range. *See Whitaker*, 1997 WL 703766, at *3 (holding that no reasonable consumer would be deceived by statement that service would cost "as little as $1 a day"); *McKinnis*, 2007 WL 4766060, at *4 (dismissing CLRA, UCL, and FAL claims where plaintiffs' interpretation of the challenged statements was unreasonable). Second, the disclaimers in the Terms of Service make clear that Verizon's internet service *will* come with speed limitations. *See Freeman*, 68 F.3d at 290 (dismissing plaintiff's CLRA claim based on presence of disclaimer); Terms of Service ¶¶ 6.1, 12.2, & 12.3. Third, plaintiff has not and cannot sufficiently allege the element of actual reliance. *See Laster*, 407 F. Supp. 2d at 1193-94 (holding that actual reliance is required). Fourth, there is a more general problem of causation (identified in the breach of contract discussion) regarding plaintiff's inability to allege that she would have in fact received any faster maximum reliable speed, let alone 3 Mbps, without the alleged speed caps.

Indeed, plaintiff's theory of recovery under the CLRA resembles that advanced by the plaintiffs in *Spiegler* and rejected by the court. There, plaintiffs also maintained that defendants represented the cabinet facing to have characteristics that it did not in fact have, in violation of California Civil Code § 1770(a)(5). *Spiegler*, 552 F. Supp. 2d at 1049. Although plaintiffs maintained that defendants had a duty to disclose the subsequent re-measurement, the court found that defendants had made no promise to recalculate the price even if the initial measurement turned out to be inaccurate. *Id.* Accordingly, it dismissed plaintiffs' CLRA claim. *Id.* at 1050. Here, the first three alleged CLRA violations, Cal. Civ. Code § 1770(a)(5), (7), & (14), should be dismissed for the same reason: the facts alleged here are incompatible with finding that the predicate misrepresentation occurred.

b.    **Plaintiff Has Not Met Her Pleading Burden With Respect To Her Passing Allegation of Unconscionability.**

Plaintiff also alleges that Verizon violated the CLRA by inserting an unconscionable provision in the contract – without specifying the provision, let alone explaining how any such provision gave rise to damages. *See* FAC ¶ 52(d). On this basis alone, the claim should be dismissed. *See Labrador v. Seattle Mortgage Co.*, No. 08-2270 SC, 2008 WL 4775239, at *6 (N.D. Cal. Oct. 29, 2008) (dismissing CLRA claim where plaintiff failed to specify unconscionable provision).

**B.    <u>Any Claim Brought On Behalf Of Putative Non-California Class Members Must Be Dismissed.</u>**

Plaintiff's attempt to bring claims on behalf of non-California class members is barred by the mandatory forum selection clause in the Terms of Service, which requires that any suit related to the customer's service must be commenced in a court located in Fairfax County, Virginia. Terms of Service ¶ 15.4. Accordingly, the breach of contract and breach of implied covenant of good faith and fair dealing claims brought on behalf of persons who were not residents of California at the time of their DSL service must be dismissed for improper venue. *See Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996) (holding that enforcement of a forum selection clause is properly enforced by dismissal for improper venue).

A party seeking to contest the enforcement of a contractual forum selection provision bears a "heavy burden" of proof. *Id.* at 325 (citations omitted). Indeed, even at the motion to dismiss stage, such a party is required to bring forth *evidence* supporting the alleged grounds for challenging enforcement of the provision, and mere allegations are not accepted as true. *Id.* at 324 (collecting authority).

The only attempt plaintiff makes to gesture at the forum selection provision comes in Paragraph 52(d) of the complaint, which is contained within her claim

under the CLRA.  There, she alludes to an unspecified "unconscionable provision in the contract."  FAC ¶ 52(d).  According to counsel's representation in the parties' Rule 7-3 conference, plaintiff believes that the CLRA claim precludes enforcement of the forum selection clause here.  While it is true that a California Court of Appeal has declined to enforce a Virginia choice-of-forum provision in the context of a CLRA claim brought on behalf of California consumers, the reasoning of that case turns on both (a) the class members' status as California residents[9] and (b) the fact that the claims were brought under the CLRA, which contains an antiwaiver provision.[10]  Neither requirement is met for the putative class members who reside outside California.  By definition, they are not California residents.  And plaintiff's CLRA claim is expressly brought *only* on behalf of California residents.  *See* FAC at 11 (heading to Fourth Cause of Action).

At bottom, plaintiff has offered no basis whatsoever to refuse to enforce the mandatory forum selection clause against non-California residents.  The purported claims of such persons should thus be dismissed.

## IV.   **CONCLUSION**

For the foregoing reasons, the Court should dismiss all the claims set forth in plaintiff's First Amended Complaint with prejudice.

---

[9] *See Am. Online v. Superior Court,* 90 Cal. App. 4th 1, 12, 108 Cal. Rptr. 2d 699 (2001) ("California courts will refuse to defer to the selected forum if to do so would substantially diminish *the rights of California residents* in a way that violates our state's public policy.") (emphasis added).

[10] *Id.* at 15 (reasoning that "enforcement of AOL's forum selection clause, which is also accompanied by a choice of law provision favoring Virginia, would necessitate a waiver of the statutory remedies of the CLRA, in violation of that law's antiwaiver provision . . . and California public policy") (citing the CLRA antiwaiver provision located at Cal. Civ. Code § 1751).

DEFS.' MEM. OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS

1    DATED: December 29, 2008              MUNGER, TOLLES & OLSON LLP
                                             HENRY WEISSMANN
2                                            RICHARD ST. JOHN
                                             PETER RENN
3

4
                                          By:      /s/ Richard St. John
5                                                  RICHARD ST. JOHN

6                                         Attorneys for Defendants
                                          VERIZON INTERNET SERVICES
7                                         INC., GTE.NET LLC D/B/A
                                          VERIZON INTERNET SOLUTIONS
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFS.' MEM. OF POINTS AND AUTHORITIES
                                          IN SUPPORT OF MOTION TO DISMISS